1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9               SOUTHERN DISTRICT OF CALIFORNIA
10

11   MARGARET CRUICKSHANK,                CASE NO. 10-CV-1545 W (NLS)

12                        Plaintiff,      **ORDER GRANTING IN PART
                                          & DENYING IN PART
13        v.                              DEFENDANT'S MOTION TO
                                          DISMISS [DOC. 27]**
14
15   WELLS FARGO BANK, N.A., et al.,
16                        Defendants.
17
18
19        Pending before the Court is Defendant Wachovia Mortgage, FSB's motion to
20   dismiss Plaintiff Margaret Cruickshank's Second Amended Complaint ("SAC").  The
21   Court decides the matter on the papers submitted and without oral argument pursuant
22   to Civil Local Rule 7.1(d.1).  For the reasons outlined below, the Court **GRANTS IN
23   PART** and **DENIES IN PART** Wachovia's motion [Doc. 27].
24
25   I.   BACKGROUND
26        Plaintiff Margaret Cruickshank, an elderly widow, is the owner of a condominium
27   located at 14740 Plaza Animado #161, San Diego, California (the "Property").  (SAC
28   [Doc. 23], ¶1.)  She purchased the Property in 1999 for $138,000.  (Id., ¶14.)

On or about February 15, 2005, Mrs. Cruickshank entered into a Pay Option ARM loan with World Savings. (*SAC*, ¶ 16.) The principal amount of the loan was $250,000. (*Id.*)

In 2006, Phillip Franklin, a loan officer and/or agent from World Savings, F.S.B., contacted Mrs. Cruickshank about refinancing the Property. (*SAC*, ¶20.) At the time, Mrs. Cruickshank was 81 years of age, and legally deaf and disabled. (*Id.*, ¶ 15.) She was also unemployed, and received approximately $1,660 in Social Security payments and a surviving-spouse pension benefit through Ford Motor Company. (*Id.*, ¶18.)

According to the SAC, Mrs. Cruickshank notified Franklin that her annual income was insufficient to cover her escalating living and medical expenses, and therefore she inquired about a reverse mortgage. (*FAC*, ¶21.) Franklin "falsely represent[ed] that she did not qualify for a reverse mortgage. . . ." (*Id.*, ¶22.) Instead, he told her that a "refinance loan was better than a reverse mortgage, with a low fixed rate, including a built-in feature that allowed her to make a low minimum payment for her convenience which would help her financial situation . . . ." (*Id.*, ¶ 24.) Relying on this representation, Mrs. Cruickshank agreed to apply for the recommended Pay Option ARM loan, with a principal balance of $310,000. (*Id.*) Before the loan closed, however, Franklin convinced Mrs. Cruickshank to a different loan: a $45,000 home equity line of credit ("HELOC") and refinance of the first loan in the amount of $245,000. (*Id.*, ¶25.)

Mrs. Cruickshank alleges that she informed Franklin that her monthly fixed income was $1,660. (*SAC*, ¶30.) However, this information was disregarded and instead Franklin misstated her monthly income as $6,000 on the loan application in order to ensure that Mrs. Cruickshank would qualify for the HELOC. (*Id.*, ¶30.) Mrs. Cruickshank alleges that she was unaware that the application overstated her income. (*Id.*) Based upon the falsified documents, on or about March 17, 2006, Mrs. Cruickshank was placed into an adjustable-rate mortgage and the HELOC. (*Id.*, ¶31.)

1    In April 2006, Mrs. Cruickshank's minimum monthly mortgage payment was
2    $1,204, in addition to a monthly finance charge on the HELOC in the amount of $325.
3    (SAC, ¶34.)  Because her monthly income exceeded these payments by only $71, Mrs.
4    Cruickshank was required to draw greater amounts from the HELOC to cover her living
5    and medical costs.   (Id.)   By May 2007, the HELOC funds ran out, and Mrs.
6    Cruickshank was forced to use her credit cards to make monthly payments.  (Id.)  In
7    September 2008, Mrs. Cruickshank was hospitalized as a result of the stress caused by
8    the loans.  (Id., ¶37.)

9    On February 4, 2010, Defendant Wells Fargo Bank recorded a Notice of Default
10   and Election to Sell under Deed of Trust, and a Trustee's Sale was scheduled for May
11   4, 2010.  (SAC, ¶39.)   On May 3, 2010, Mrs. Cruickshank filed for Chapter 13
12   Bankruptcy relief.  (Id.)

13   On June 15, 2010, Mrs. Cruickshank filed suit against the defendants in the San
14   Diego Superior Court.  (See Removal Notice [Doc. 1], Ex. A.)  On July 23, 2010,
15   Defendant Wachovia removed the case to this Court based on diversity jurisdiction.
16   (Id.)

17   On August 26, 2010, Mrs. Cruickshank filed an FAC, asserting 14 state-based
18   causes of action.  Wachovia filed a motion to dismiss based on a number of grounds.  On
19   February 27, 2011, this Court issued an order finding, among other things, that the
20   causes of action were time barred.  The order granted Mrs. Cruickshank leave to amend
21   certain causes of action.

22   On March 4, 2011, Mrs. Cruickshank filed the SAC.  Defendant again seeks to
23   dismiss the SAC based on the statute of limitations.

24

25   II.   DISCUSSION

26   A.   The allegations in the SAC establish that the statute of limitations
27        accrued in May 2007.

28   Under California law, the statute of limitations accrues "upon the occurrence of
     the last element essential to the cause of action."  California Sansome Co. v. U.S.

1    Gypsum, 55 F.3d 1402, 1406 (9th Cir. 1995) (citing City of San Diego v U.S. Gypsum,

2    30 Cal. App.4th 575, 582 (1994)).   "A tort claim does not accrue until there is

3    wrongdoing *and* 'actual and appreciable harm.'"  Id. (emphasis in original).   The

4    defendant, therefore, "has the burden of demonstrating the complained of wrongdoing

5    *and* harm occurred outside the limitations period."  Id.

6        Here, taking the allegations in the SAC as true, Mrs. Cruickshank knew or should

7    have known about the alleged wrongdoing in February 2006 when the loan transaction

8    closed.   At that time, she received a copy of the loan application that misstated her

9    income as $6,000.  Based on this misstatement, a reasonable person should have been

10   alerted to Franklin's wrongful conduct.  See Jolly v. Eli Lilly & Co., 44 Cal.3d 1103,

11   1111 (1988) ("the limitations period begins once the plaintiff 'has notice or information

12   of circumstances to put a reasonable person on *inquiry* . . . .' [Citations omitted.]  A

13   plaintiff need not be aware of the specific 'facts' necessary to establish the claims. . . .")

14       Mrs. Cruickshank argues that defendants concealed the falsified application "by

15   intentionally embedding the unsigned Loan Application in the bundle of documents she

16   received from Defendants' agents at closing in order to prevent her from becoming

17   aware of Defendants' misconduct." (*Opp.* [Doc. 28], 9:4–8; SAC, ¶ 30.)  This argument

18   is unpersuasive because Mrs. Cruickshank admits that she had the falsified application,

19   but simply failed to review the documents.

20       The next issue is when Mrs. Cruickshank suffered appreciable harm.   Mrs.

21   Cruickshank argues that the she did not suffer appreciable harm "until her loan

22   payments exceeded her ability to pay," which she contends occurred in September 2008.

23   (*Opp.*, 7:9–15.)  But the allegations in the SAC establish that this occurred in May of

24   2007:

25           In May of 2007, the HELOC funds ran out, and Plaintiff was forced to
             make her monthly mortgage payments by using the maximum amount
26           available on her credit card for the next year.

27   (SAC, ¶34.)

28

Defendant argues that Mrs. Cruickshank suffered appreciable harm as early as April 2006 when Mrs. Cruickshank alleges she was paying $1,529 in mortgage payments and was, therefore, left with only $71 to cover other living expenses. The Court disagrees with this argument for two reasons.

First, the SAC does not identify the amount Mrs. Cruickshank was paying towards her mortgage before the 2005 loan, which may have been even higher. In other words, to the extent Mrs. Cruickshank's financial situation improved or remained roughly the same after the 2005 loan, the Court cannot find that she suffered appreciable harm.

Second, Defendant's argument fails to take into account Mrs. Cruickshank's HELOC. The HELOC necessarily increased the amount of money available to her to pay living expenses. This fact also suggests that Mrs. Cruickshank did not suffer appreciable harm in April 2006.

For the forgoing reasons, under the standard applicable to a motion to dismiss, the Court finds that the SAC establishes that Mrs. Cruickshank's causes of action accrued in May 2007. Accordingly, the causes of action for breach of fiduciary duty, fraud, negligence, negligent misrepresentation, and intentional infliction of emotion distress are time barred. The causes of action for financial elder abuse, and violation of California Business and Professions Code § 17200 are not time barred.

**B.    Mrs. Cruickshank's Elder Abuse Claim is sufficiently pled.**

Defendant also argues that Mrs. Cruickshank's financial elder abuse claim is insufficiently pled because she does not allege that Wachovia ratified Franklin's conduct. The Court disagrees.

The SAC alleges that Wachovia is the successor to World Savings, which intentionally targeted elderly borrowers, such as Mrs. Cruickshank, to place them in loans with "toxic terms" in order to generate substantial profits. (*SAC*, ¶¶ 3, 12.) The SAC further alleges that World Savings "trained, directed, and authorized its'

1  employees, agents, mortgage brokers and loan officers to implement" the type of scheme

2  used on Mrs. Cruickshank.  (*Id.*, ¶ 13.)  Finally, the SAC specifically alleges that "each

3  and every Defendant alleged herein ratified the conduct of each and every other

4  Defendant."  (*Id.*, ¶ 9.)  Based on these allegations, the Court finds Mrs. Cruickshank

5  has sufficiently pled a claim for financial elder abuse.

6

7          **C.**    **Injunctive relief and restitution are not causes of action.**

8          Defendant argues that Mrs. Cruickshank's causes of action for injunctive relief

9  and restitution should be dismissed because they are not recognized causes of action

10  under California law.

11          Although Mrs. Cruickshank argues that she is entitled to restitution and

12  injunctive relief, she does not cite any authority supporting restitution and injunctive

13  relief as independent causes of action.  Accordingly, the Court will grant Defendant's

14  motion to dismiss the eighth and ninth causes of action.[1]

15

16          **D.**    **The declaratory relief cause of action.**

17          Defendant argues that because all of Mrs. Cruickshank's substantive claims fail,

18  so too does the declaratory relief cause of action.  However, as set forth above, Mrs.

19  Cruickshank's causes of action for financial elder abuse and violation of the Business &

20  Professions Code are not time barred.  Additionally, the cause of action for financial

21  elder abuse is sufficiently pled.  Accordingly, Defendant's request to dismiss the

22  declaratory relief claim is denied.

23

24

25

26
_____

27          [1]Although the Court grants the motion to dismiss the causes of action for restitution
   and injunctive relief, the SAC also lists restitution and injunctive relief as remedies. Defendant
28  did not file a motion to strike those remedies.

III.    CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss the following causes of action: breach of fiduciary duty (1st); fraud (2nd); negligence (3rd); negligent misrepresentation (4th); intentional infliction of emotional distress (7th); restitution (8th); and injunctive relief (9th). The motion is **DENIED** as to the remaining causes of action.

**IT IS SO ORDERED.**

DATED:  May 24, 2011

_____
Hon. Thomas J. Whelan
United States District Judge

- 7 -                                                          10-CV-1545 W